STATE OF CONNECTICUT *v.* CARMELO O. ROMANO

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued June 8—decided June 29, 1973

*Richard W. Wright,* with whom, on the brief, was *Joseph E. Fazzano,* for the appellant (defendant).

*George D. Stoughton,* chief assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

MacDonald, J.   The defendant, Carmelo O. Romano, was found guilty by a jury of the crimes of pool selling in violation of § 53-295 of the General Statutes, destruction of property in violation of § 54-33e, and interference with search in violation of § 54-33d.   In his appeal from the judgment rendered on the verdict, he has assigned as error (1) the court's denial of his motion to suppress evidence; (2) two rulings on the admissibility of evidence; and (3) the denial of his motion to set aside the verdict as against the evidence.

The defendant's first assignment of error, the denial of his pretrial motion to suppress evidence, raises two issues:   (1) whether the search warrant under which the arresting officers entered the defendant's home was invalid because of the insufficiency of the affidavit on the basis of which the warrant was issued; and (2) whether the warrant was illegally executed because of a three-day delay between its issuance and execution.

The facts as found by the court for the purpose of the motion to suppress may be summarized as fol-

lows: On August 22, 1969, officers of the West Hartford police department made application to a judge of the Circuit Court for a warrant to search the defendant's home at 192 Brace Road, West Hartford. The property sought and specifically listed in the warrant included various devices customarily used to record bets, a telephone with the number 521-1541, and money. The affidavit in support of the application recited that "information [was] received from a previously reliable informant" who had, in the past, given accurate information resulting in the arrests and convictions of gamblers. It stated that the informant had been present òn many occasions when gaming bets had been called in to telephone number 521-1541, which number the police had verified as the defendant's home telephone number. The affidavit further stated that the informant had been present on August 12, 1969, when two different bets on horses were called in to 521-1541, one in a form of code, and that the police had established independently that a horse specifically named in one of the bets was, in fact, running at the track named on that day. The affidavit also contained information received from the Hartford police department to the effect that the defendant was "very active with known gamblers," that he had a prior arrest record for gambling offenses, and that the "information received is that he is now conducting gambling operations at his home, 192 Brace Road, West Hartford." Finally, the affidavit disclosed that a surveillance on the defendant's home from August 5, 1969, to August 19, 1969, had indicated that someone was at the home during what were considered prime hours for betting on horses, and that an investigative telephone call made to 521-1541 had been answered by a male voice giving the name of Collins.

The search warrant was issued on Friday, August 22, 1969, but was not executed on that day because of insufficient police personnel. It was not executed on Saturday, August 23, because the automobiles normally seen at the defendant's house were not present, nor on Sunday, August 24, because the racetracks were closed on that date, but it was executed on the following day, Monday, August 25. During the search made pursuant to the warrant the police, after a physical struggle with the defendant, seized four telephones, a tin can containing paper, pens, and a piece of "dissolvo paper" (paper which when placed into water dissolves into a jellied mass), about $1500 found under the mattress in the defendant's bedroom and about $700 found on the person of the defendant. The police also answered a number of incoming telephone calls.

We consider first the attack on the sufficiency of the affidavit to establish probable cause. "The principles by which we test the adequacy of an affidavit have been designed to insure that a disinterested judicial officer make his own common-sense judgment that there is probable cause for the issuance of the warrant." *State* v. *Grayton,* 163 Conn. 104, 106, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495; *Aguilar* v. *Texas,* 378 U.S. 108, 110–11, 84 S. Ct. 1509, 12 L. Ed. 2d 723; *State* v. *Jackson,* 162 Conn. 440, 444, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121. "*Aguilar* v. *Texas, . . .* [378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723], states the standard for determining whether an affidavit containing hearsay is sufficient for such an independent judgment: The magistrate must be informed of (1) some of the underlying circumstances relied on by the informant, and (2) some of the underlying circumstances from

which the affiant could conclude that the informant was credible or his information reliable." *State* v. *Grayton,* supra.

The affidavit before us clearly sets out such circumstances. The informant personally had been present on many occasions when bets were called in to telephone number 521-1541, which the police had verified as the defendant's number at the premises in question. Information as to a specific bet recounted by the informant had been verified. The informant was considered reliable and previously had given information which led to the conviction of gamblers. The previous reliability of an informant, though not constitutionally required, is a basis for crediting his information. See *United States* v. *Harris,* 403 U.S. 573, 581–82, 91 S. Ct. 2075, 29 L. Ed. 2d 723; *State* v. *Grayton,* supra. Affidavits reciting considerably less in the way of underlying circumstances as to the credibility of the informant have been held sufficient to establish probable cause. See, e.g., *United States* v. *Harris,* supra, 575.

The defendant claims that, since the informant did not state that he actually had seen the property sought, namely the record-keeping materials, the telephone, and other items, but merely said that he had been present when bets were telephoned in to the defendant's number, the property in question was linked insufficiently to the premises to be searched to establish probable cause. The gist of this contention is that the Circuit Court judge, on the basis of information from a reliable informant that numerous bets were being called in to a telephone located at the premises to be searched, could not permissibly infer that there was probable cause

to believe that materials to record those bets and the telephone over which they were taken were present at the premises. The defendant cites *United States* v. *Dubin,* 217 F. Sup. 206 (D. Mass.), and *United States* v. *Conway,* 217 F. Sup. 853 (D. Mass.) in support of this proposition, but they are clearly distinguishable from the case at bar because in each of them the premises to be searched, a bar and a grocery store, were held open to the use of the public. In neither case did the affidavit recite the circumstances of the taking of the wagers involved, nor did it establish any connection between the person taking bets and the premises to be searched. Here the address of the defendant was his own private residence, not a public establishment, and the telephone listed in the affidavit had been verified as being registered in the defendant's name and at the premises in question, thus constituting a definite connection with those premises.

A magistrate is entitled to rely on the ordinary dictates of common experience and on his own common sense; *Spinelli* v. *United States,* 393 U.S. 410, 415, 419, 89 S. Ct. 584, 21 L. Ed. 2d 637; *State* v. *Jackson,* supra, 445; and is "allowed to draw normal inferences from the facts alleged in the requesting officer's affidavit, . . . including inferences based upon the usual procedures of the offenders of the statute in question." *Rutledge* v. *United States,* 283 A.2d 213, 215 (D.C. App.). "As the term probable cause implies, the issue is one of probabilities." *State* v. *Jackson,* supra. The ordinary dictates of common experience and common sense could have led the issuing judge in the case at bar to the conclusion that, where bets are being received over the telephone, sometimes in a form of code, very probably materials customarily associated with

the taking of bets, and certainly the telephone itself, would be present at the address where that telephone was located. We find no error in the reaching of such a conclusion on the basis of the facts alleged in the affidavit before us.

The remaining contentions of the defendant concerning probable cause are readily disposed of. Given the information transmitted by the informant, the judge issuing the warrant did not have to "rely" on the results of the surveillance, on the reputation of the defendant among other police officers, nor on his prior arrest record. This information, however, properly could be considered in terms of adding further credibility to the informant's tip. The information received from the Hartford police, including the prior arrest record, pertaining as it did to the reputation of the defendant, clearly was " 'a practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip." *United States* v. *Harris,* supra, 583. The fact that the information was obtained from another police department does not detract from its usefulness for this purpose, as the West Hartford police were entitled to act on the basis of the collective information of their own department and of the law enforcement community as a whole. See *United States* v. *McCormick,* 309 F.2d 367, 372 (7th Cir.), cert. denied, 372 U.S. 911, 83 S. Ct. 724, 9 L. Ed. 2d 719; *State* v. *Cobuzzi,* 161 Conn. 371, 377, 288 A.2d 439, cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664. From the foregoing, we conclude that, in light of the totality of circumstances brought to his attention in the affidavit, the Circuit Court judge had a "substantial basis" for crediting the information supplied by the informant and thus for finding

probable cause to issue the warrant. See *Jones* v. *United States,* 362 U.S. 257, 271, 80 S. Ct. 725, 4 L. Ed. 2d 697.

We next consider the defendant's other claim in support of his first assignment of error, that the search warrant was illegally executed in that the delay from Friday, August 22, to Monday, August 25, was "unreasonable." The applicable statutes governing the issuance and execution of search warrants are § 54-33a, which requires that the warrant "command the officer to search within a reasonable time the person, place or thing named, for the property specified," and § 54-33c, which states that "[t]he warrant shall be executed within ten days and returned with reasonable promptness consistent with due process of law."

The question of whether a warrant was executed in a reasonable time is one to be determined on a case-by-case basis, according to the facts and circumstances of each case. *United States* v. *Harper,* 450 F.2d 1032, 1043 (5th Cir.); *United States* v. *Bradley,* 428 F.2d 1013, 1015 (5th Cir.); *State* v. *Cesero,* 146 Conn. 375, 379, 151 A.2d 338. Here, the police did not execute the warrant on Friday because of insufficient manpower. As the defendant in his brief apparently concedes, this is a justifiable basis for delay. *United States* v. *Rael,* 467 F.2d 333, 336 (10th Cir.). The defendant's principal argument in support of this claim, therefore, is that the absence of the automobiles normally present at the premises on Saturday and the fact that the racetracks were closed on Sunday did not justify the delay of execution until Monday.

We see nothing unreasonable in such delay. The police are not required to execute a warrant in a

manner which may preclude arrest. *United States* v. *Harper,* supra, 1046; *United States* v. *Dunnings,* 425 F.2d 836, 841 (2d Cir.), cert. denied, 397 U.S. 1002, 90 S. Ct. 1149, 25 L. Ed. 2d 412. Since the automobiles usually present were absent on Saturday, execution on that day very well may have been a futile act thereby precluding the arrest of the defendant. On Sunday, when the racetracks were closed, the police reasonably could have doubted that the facts in the affidavit, alleging a gambling operation, existed on that day in the same fashion as they did on gambling weekdays. We find nothing unreasonable in the police waiting until they believed that the circumstances stated in the affidavit again obtained, particularly where the period of doubt arose because of the mere intervention of a nongambling day. "To permit agents to make the judgment that the averments of the affidavit are again satisfied, after a period of doubt, does not undercut the policy requiring an independent judicial determination of the existence of probable cause." *United States* v. *Dunnings,* supra, 840. The occurrence of one nongambling day does not constitute such a break in the stream of probable cause as to require a new judicial determination of such probable cause where one had been made only two days earlier, nor is the nonexecution of the warrant on such a day an unreasonable delay on the part of the police.

The defendant next claims error in the admission of testimony, over counsel's objection, concerning telephone calls received by the officers while in the process of executing the search warrant, asserting that the testimony should have been excluded as inadmissible hearsay. The following is an example of such calls received by the police: "This is John; Rockingham in the first, number two, and in the

second, number one, a ten dollar double, okay?" This claim of error also is without merit. Testimony concerning the telephone calls was offered not to prove that the statements made in them were true, but simply as testimony as to verbal acts, evidence of the betting activity itself, and the jury were so admonished. Such evidence is admissible not as an exception to the hearsay rule but because it is not within that rule. *State* v. *DeNegris,* 153 Conn. 5, 12, 212 A.2d 894; *State* v. *Tolisano,* 136 Conn. 210, 214, 70 A.2d 118; see also note, 13 A.L.R.2d 1409–19.

The defendant's third assignment of error claims that the trial court erred in allowing Detective Francis Reynolds to testify as to what constituted "dissolvo paper," and as to whether it had any association with a particular activity, on the ground that he did not properly qualify as an expert witness. At the trial the defendant's counsel also objected to the question of whether dissolvo paper had an association with any particular activity on the grounds that it was unduly broad and prejudicial, but this claim was not briefed and accordingly must be treated as having been abandoned. *State* v. *Weston,* 164 Conn. 635, 636, 325 A.2d 457.

"The determination of the qualification of an expert is largely a matter for the discretion of the trial court"; *State* v. *Smith,* 157 Conn. 351, 356, 254 A.2d 447; *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73; and the trial court's decision is not to be disturbed on appeal "unless that discretion has been abused, or the error is clear and involves a misconception of the law." 31 Am. Jur. 2d 531, Expert and Opinion Evidence, § 31; *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277. The finding discloses that Detective Reynolds testified

that he had been engaged in police work for sixteen years, fourteen as a detective; that he had investigated one hundred or more gambling or pool selling cases; that he had attended many seminars and local classes in that subject; and that he had observed that type of paper on many occasions previously. On the basis of this testimony the trial court cannot be held to have abused its broad discretion in allowing him to testify that the paper in question was dissolvo paper and that it is associated with gambling. See *State* v. *Beaulieu,* 164 Conn. 620, 632, 325 A.2d 263.

The defendant's final assignment of error is that the court erred in refusing to grant his motion to set aside the verdict as against the evidence. Whether the evidence is sufficient to support the verdict is tested by the evidence printed in the appendices to the briefs. *State* v. *Benton,* 161 Conn. 404, 406, 288 A.2d 411. As to a motion to set aside a verdict, the evidence must be given a construction most favorable to sustaining the jury's verdict. *State* v. *Raffone,* 161 Conn. 117, 121, 285 A.2d 323. The defendant having failed to file an appendix to his brief, a review of the evidence printed in the appendix to the state's brief, viewed in the light most favorable to sustaining the jury's verdict, clearly leads to the conclusion that this assignment also is without merit and requires no discussion.

There is no error.

In this opinion the other judges concurred.