STATE OF CONNECTICUT *v.* RONALD ZDANIS

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued April 12—decision released June 14, 1977

*Maxwell Heiman,* with whom were *Martin A. Clayman* and, on the brief, *William J. Eddy* and *Ann T. Baldwin,* for the appellant (defendant).

*Richard E. Maloney,* assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

LOISELLE, J. The defendant was found guilty of the murder of his stepdaughter. From the judgment rendered on the verdict he has appealed to this court.

At the trial, the state presented evidence that the defendant had pointed a shotgun at his wife, Barbara Zdanis, and wounded her with a shot in the back as she fled their apartment. More shots were subsequently heard from the direction of the apartment, and the defendant's eight-year-old step-daughter was found dead in her bed when the police arrived. The defendant presented evidence that his wife had suicidal tendencies, that she had threatened to kill herself with the shotgun, which went off, firing toward the child's bed as he attempted to take the gun away from his wife, that his wife was running from the apartment and that he, in shock, fired toward the door for no reason. He also wounded himself.

Some testimony claimed to have been erroneously admitted was stricken by the court and some questions, after objection, were withdrawn by the prosecution. Some testimony merely restated testimony already put into evidence without exception, and other testimony was admitted without objection and exception by the defense. None of these matters will be considered as ground for reversal. *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495; *Mei* v. *Alterman Transport Lines, Inc.,* 159 Conn. 307, 316, 268 A.2d 639.

The defendant claims that the court erred in admitting evidence of specific acts of misconduct on his part, which were irrelevant and served to prove only his bad character rather than his guilt of the crime charged. The defendant's brief included so much evidence which the state offered which he claims tended to show his bad character that it is necessary to discuss this evidence in general terms, for the most part, rather than to deal separately with each portion of the transcript printed in the defendant's brief.

The prosecution presented evidence concerning a dispute between the defendant and his wife which began on the weekend of September 21, 1974, a month prior to the homicide. The state made no claim that the defendant had any animosity toward his stepdaughter, but only that he shot her in the course of the episode in which he also shot his wife. The evidence concerning the dispute was admissible to show a motive for shooting the wife, from which the shooting of the child could have resulted. As part of the history of the dispute, testimony was admitted which showed that the defendant had been

drunk, angry, abusive and threatening to his wife,[1] had locked her out of their apartment and had told her that due to his anger he had thrown away furnishings. This evidence was not introduced for the purpose of showing bad character, but was incidental to the history of the dispute. The trial court has a broad discretion in determining relevance. *State* v. *Saia,* 167 Conn. 286, 291, 355 A.2d 88. It was within the discretion of the court to determine that the probative value of the evidence outweighed its prejudicial tendency. *State* v. *Ralls,* 167 Conn. 408, 419, 356 A.2d 147. It cannot be said that the court exceeded its discretion in admitting this testimony.

On the state's initial direct examination of Barbara Zdanis, testimony was admitted that the defendant did not permit his wife to have any friends or call her family. In view of the fact that the dispute which was alleged to have terminated in the shooting began when the wife was "house-sitting" for relatives, it cannot be said that the court exceeded its discretion in admitting this testimony.

After evidence was introduced over objection, but without exception, that Barbara Zdanis was the sole support of the family and handed her paycheck over to the defendant, the state was permitted to elicit, over objection and exception by the defense, testimony that the defendant was "supposed to pay the rent." This evidence was irrelevant and should have been excluded. The dispute between the defendant and his wife was not shown to have any-

---

[1] The defendant also objected that the testimony regarding abuse and threats was hearsay. It was admissible to show the state of mind of the defendant at the time and the effect of his words on his wife.

thing to do with family finances. The testimony would have proved harmless, however, had the defense on cross-examination not brought out the fact that just before the shooting the Zdanises were being evicted, after which other testimony was admitted which tended to show that the defendant had not paid the rent. The net effect was to portray the defendant as one who had appropriated funds given him by his wife, but the defendant cannot be permitted by expanding upon an otherwise harmless error to render it a ground for reversal.

Further, on direct examination, and over timely objections of irrelevance and hearsay, the state elicited from Barbara Zdanis testimony that forty-eight hours before the shooting, the defendant said something in her presence about the pregnancy of another woman by him.[2] Although it was error to admit this evidence, it was harmless error, in view of the defendant's own testimony on direct that it was his wife's distress over this news which played a part in her threat to commit suicide. Indeed, he testified that at the time of the shooting she said that "she thought I was lying, that she believed the story about Maria [the other woman], and she said that she was going to shoot herself."

The defendant claims that in the redirect examination of the defendant's wife, the state was allowed to introduce evidence of the defendant's bad character. The evidence in question was admitted after the defendant "opened the door" by

---

[2] The testimony is confusing as to the time and the content of the defendant's alleged statement. It may be interpreted as a statement that the other woman had borne his child, or that she had claimed to be pregnant and was lying, or that she was then pregnant by the defendant.

asking the wife, on cross-examination, "And do you believe that your husband would cold-bloodedly kill your daughter, Pam, based on his relationship with her and his relationship with you that spanned four years?" This question raised a defense of lack of motive for the killing, effectively introducing a claim that the relationship between the defendant and his wife, over a four-year period, was such that it would be illogical to believe that he would kill her daughter. After the relationship of the parties was thus put into issue, testimony was admitted on redirect showing that the defendant had assaulted his wife, had destroyed her eyeglasses, and had punished her for smoking by pushing her naked out the door and locking it. This testimony was relevant to the relationship of the parties, which was raised by the defense on its cross-examination. Therefore it was not outside the scope of the cross-examination.

Because the evidence showed the defendant's bad character, the defense would have this court find error in permitting testimony concerning those specific acts of misconduct. Evidence may not be admitted for the purpose of showing the defendant's bad character unless he has first put his character in issue by presenting evidence of good character. Nor may character be attacked by showing particular acts of misconduct, or a tendency or disposition to commit the crime of which he is charged. *State* v. *Martin,* 170 Conn. 161, 163, 365 A.2d 104; *State* v. *Gilligan,* 92 Conn. 526, 531, 103 A. 649. The defendant had not put his character in issue, but the defense had put in issue the relationship of the parties. The evidence of misconduct of the defendant was admitted, not to show bad character per se, but to show the relationship of the parties.

The defendant further claims that error was committed when the court permitted the prosecution to impeach the defendant's credibility by cross-examining him regarding specific acts of misconduct which were not within the scope of the direct examination. This testimony concerned both the defendant's living with another woman[3] in 1969 or 1970, four years before the shooting, and the events of the weekend of September 21, 1974, on which, according to his wife, the dispute which culminated in the shooting began. Neither of these subjects had been touched upon in direct examination of the defendant. The scope of cross-examination is limited by the scope of the direct examination unless there is an attack on the credibility of the witness. *State* v. *Hall,* 165 Conn. 599, 607, 345 A.2d 17; *State* v. *Evans,* 165 Conn. 61, 64, 327 A.2d 576; *State* v. *Manning,* 162 Conn. 112, 116, 291 A.2d 750; *Mendez* v. *Dorman,* 151 Conn. 193, 198, 195 A.2d 561; 81 Am. Jur. 2d, Witnesses, § 478. The prosecution claimed that the evidence was relevant to credibility. "Whether particular acts of misconduct are relevant to lack of veracity depends on whether they have a logical tendency to indicate a lack of veracity." *Vogel* v. *Sylvester,* 148 Conn. 666, 675–76, 174 A.2d 122. Although that case held that a married man's sexual misconduct with another woman could not be said to be irrelevant to veracity, in this case there was no showing that the defendant was married at the time of the cohabitation. Neither his anger at his wife nor his other activities on the weekend of September 21, 1974, has any relevance to veracity. Although credibility may be attacked by contradiction, so long as the matter is in issue

---

[3] This was not the same woman mentioned in connection with pregnancy.

(and the history of the dispute between the parties was in issue in this case), it may not be attacked by first introducing one version of an event through a witness for the prosecution and then cross-examining the defendant, who has not testified as to that event on direct, thus creating a retroactive contradiction of his testimony. Jones on Evidence (6th Ed.) § 25.2, pp. 111-12.

The court does have wide discretion as to the scope of cross-examination. *State* v. *Palozie,* 165 Conn. 288, 297, 334 A.2d 468; *Fahey* v. *Clark,* 125 Conn. 44, 46, 3 A.2d 313; 81 Am. Jur. 2d, Witnesses, § 478. This discretion is not so unlimited, however, as to permit cross-examination of a defendant (whom the state cannot make its own witness) on matters totally unrelated to his testimony on direct, and not relevant to his credibility, especially where prejudice results. The evidence which was introduced in this cross-examination did not rebut, impeach, modify or explain any of the defendant's direct testimony and was not relevant to his credibility. It was error for the trial court to admit this evidence over the proper objection and exception of the defense. The evidence could reasonably have affected the jury's verdict, and hence was harmful. *State* v. *Martin,* 170 Conn. 161, 167, 365 A.2d 104.

The remaining claims of error refer to matters which are not likely to occur in the retrial of the case and are therefore not discussed.

There is error, the judgment is vacated and the case is remanded for a new trial.

In this opinion the other judges concurred.