STATE OF CONNECTICUT *v.* THOMAS R. SHARPE
(12102)

PETERS, C. J., PARSKEY, SHEA, DANNEHY and SCHALLER, Js.

Argued January 16—decision released April 16, 1985

*Richard T. Meehan, Jr.,* with whom, on the brief, were *Richard T. Meehan, Sr.,* and *Kathleen M. Van Der Aue,* for the appellant (defendant).

*James G. Clark,* deputy assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, and *David Cohen* and *Carl Schuman,* assistant state's attorneys, for the appellee (state).

DANNEHY, J. The defendant was charged with attempted murder in violation of General Statutes § 53a-54a (a), with assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and with criminal use of a firearm in violation of Public Acts 1981, No. 81-342, § (1) (a), in a single information which contained separate counts for each offense. After the close

of the state's case-in-chief the defendant moved for a judgment of acquittal regarding the charge of criminal use of a firearm. The trial court granted the motion and the trial continued. At the close of all the evidence a motion for judgment of acquittal on the remaining charges was denied and the jury found the defendant guilty of attempted murder and guilty of the lesser included offense of assault in the second degree. General Statutes § 53a-60 (a) (2). Concurrent sentences of eighteen years for attempted murder and of five years for assault in the second degree were imposed. In his appeal the defendant raises numerous issues which we have renumbered and which we discuss as they relate to the claims (1) that the information charging him with attempted murder and with assault in the first degree was multiplicitous, (2) that the trial court abused its discretion in its rulings on the scope of the cross-examination of the defendant and of a defense witness, (3) that the trial court erred in various of its evidentiary rulings, and (4) that the trial court erred in denying the defendant's post trial motion for judgment of acquittal and in its charge to the jury. We find none of the defendant's claims persuasive.

There is evidence that on December 30, 1981, Joseph Biancheri was shot and physically injured. Biancheri testified that at about 5:30 p.m. on that day he got into his jeep that was parked in the driveway of his house at 33 Summit Street in Norwalk. He started the motor, and, as he backed into the street, he noticed a man in a lighted area carrying "a cutoff rifle or a long barrel" gun. The man advanced, and as he continued to advance he was clearly visible in the glare of the headlamps on the jeep. When he came to the front of the vehicle, he fired one shot. Biancheri was hit. He then approached the driver's side of the jeep, and, looking directly at Biancheri, started firing again. Five, maybe six, more shots were fired. Biancheri sustained wounds

of the head, left hand and left wrist. The gunman fled on foot. Biancheri's testimony demonstrated that he had ample opportunity to observe his assailant before and during the shooting. At the trial Biancheri positively identified the defendant as the man who shot him.

I

Prior to trial the defendant filed a motion to dismiss either the charge of attempted murder or the charge of assault in the first degree on the grounds that the charges arose out of the same transaction and were, therefore, multiplicitous. He argues that the denial of his motion violated his right to be free from double jeopardy under the fifth and fourteenth amendments to the United States constitution. *State* v. *McCall,* 187 Conn. 73, 89, 444 A.2d 896 (1982). This argument has two prongs, each a necessary condition to its success: (1) the charges must arise out of the same transaction, and (2) the charged crimes must be the same offense. Double jeopardy prohibits, inter alia, not only multiple trials, but also multiple punishments for the same offense in a single trial. See *State* v. *Frazier,* 194 Conn. 233, 238, 478 A.2d 1013 (1984).

We recently repeated the test for determining whether there are two offenses or only one in *State* v. *Devino,* 195 Conn. 70, 74, 485 A.2d 1302 (1985). There we said that the classic test to be applied to determine whether there are two offenses or only one is " 'whether each provision requires proof of a fact which the other does not.' *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)." Id.; see also *Brown* v. *Ohio,* 432 U.S. 161, 166–67, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977). We apply this test with reference to the charging documents. *State* v. *McCall,* supra, 90.

The state in this case concedes that each offense, separated into two counts, arose from the same trans-

action. Where the same act constitutes a violation of two distinct statutory provisions, the analysis requires a determination of whether, with reference to the charging documents; *State* v. *McCall,* supra, 90; "each provision requires proof of a fact which the other does not." *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). If the elements of one offense include the elements of a lesser offense, or if one offense is merely nominally distinct from the other, then double jeopardy attaches. *State* v. *Goldson,* 178 Conn. 422, 425, 423 A.2d 114 (1979).

The defendant was charged in the information with attempted murder[1] and with assault in the first degree.[2] A conviction for attempted murder requires proof of intentional conduct constituting a substantial step toward intentionally causing the death of another person. *State* v. *Jacobowitz,* 182 Conn. 585, 592, 438 A.2d 792 (1981). No showing of actual injury is required. Conversely, a conviction for assault in the first degree requires proof that the defendant actually caused serious physical injury to another person. No showing of intent to cause death is necessary. Therefore, each offense requires proof of a fact which the other does not. Consequently, the statutory violations charged,

---

[1] General Statutes § 53a-49 provides in part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . ."

General Statutes § 53a-54a provides in part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

[2] General Statutes § 53a-59 provides in part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

attempted murder and assault in the first degree, are not the same offense for double jeopardy purposes.[3] This conclusion disposes of the defendant's argument that he was subjected to double jeopardy by being punished twice upon the same evidence and essentially the same offense. He was not twice punished for the same crime.

## II

It is claimed that the trial court abused its discretion when it overruled the defendant's objections to the scope of the cross-examinations of the defendant himself and of a defense witness.

The defendant testified in his own behalf. He first related an incident that happened outside the courtroom during the trial. Then he said that he was right handed. The final inquiry of the defendant on direct examination was, "Did you shoot Joseph Biancheri?" He replied, "No, I did not."

Over objection, the state was permitted to cross-examine the defendant about his relationships to Jay Borawski, with whom he had been seen on the morning of the shooting, and to Raymond Dalesio, whose involvement in arranging for the shooting had been suggested by defense counsel during his prior cross-examinations of two state witnesses.[4] It is the defend-

---

[3] The trial court denied the defendant's motion to dismiss, finding that the requisite intent for each crime was different. We affirm the trial court's decision, although based on erroneous grounds, because proper grounds exist to support it. *A & H Corporation* v. *Bridgeport,* 180 Conn. 435, 443, 430 A.2d 25 (1980).

[4] The state produced photo arrays and asked the defendant if he knew any of the men depicted in the mug shots. The state admits that these questions, except as to Dalesio, were irrelevant and technically should not have been permitted over the defendant's objections. Since the defendant has failed to make any showing of harm with respect to these questions, we are satisfied that the error was harmless. *State* v. *L'Heureaux,* 166 Conn. 312, 323–24, 348 A.2d 578 (1974).

ant's contention that these questions and others were beyond the scope of the direct examination.[5]

It is well settled that our rule restricts cross-examination to matters covered in the direct examination, except as they involve credibility alone. *State v. Zdanis,* 173 Conn. 189, 195, 377 A.2d 275 (1977); *State v. Hall,* 165 Conn. 599, 607, 345 A.2d 17 (1973). A question is within the scope of the direct examination if it is designed to "rebut, impeach, modify, or explain any of the defendant's direct testimony. . . ." *State v. Zdanis,* supra, 196. Restrictions on the scope of cross-examination are within the sound discretion of the trial court. *State v. Thompson,* 191 Conn. 146, 148, 463 A.2d 611 (1983).

The crucial issue before the jury was whether the defendant shot Biancheri. The record here discloses that on direct examination, the defendant, as a witness in his own behalf, said that he did not shoot Biancheri. We find that the defendant opened the door on direct examination. Once the door was opened, the defendant could not be allowed to claim error on the part of the court in permitting cross-examination with regard to the veracity of his previous testimony. We may review the trial court's exercise of discretion in controlling the scope of the cross-examination only to determine whether that discretion has been abused. The record shows no such abuse of discretion.

The defendant also claims that the trial court erred in allowing the state to question the defendant's alibi witness, Louis Raab, about cheating on his taxes. At trial, the defendant objected to this line of inquiry as "irrelevant and immaterial." On appeal he claims for

---

[5] The state also questioned the defendant about his failure to report all of his earnings on his income tax return. No objection was taken by the defendant to this line of questioning, nor does he press any constitutional claim on appeal. We therefore decline to address this portion of his argument.

the first time that this questioning was an "oblique attempt" to impeach the defendant as well as Raab. Because the defendant failed properly to raise and to preserve this latter claim, our review will be limited to his objection as to relevancy. *State* v. *Braman,* 191 Conn. 670, 684–85, 469 A.2d 760 (1983).

The defendant offered an alibi that he was at his mother's home on December 30, 1981, at the time of the shooting. Raab testified that he had a dinner date with the defendant's mother that evening, that he arrived at her home shortly before 7 p.m., and that the defendant was there when he arrived. He also testified that, in his opinion, the defendant was a truthful person.

To attack the credibility of a witness, inquiry may be made, in the discretion of the trial court, as to particular acts of misconduct tending to show a lack of veracity even though such evidence may be irrelevant to the issues in the case. *State* v. *Dolphin,* 195 Conn. 444, 459, 488 A.2d 812 (1985). " 'Whether particular acts of misconduct are relevant to lack of veracity depends on whether they have a logical tendency to indicate a lack of veracity.' *Vogel* v. *Sylvester,* 148 Conn. 666, 675–76, 174 A.2d 122 [1961]." *State* v. *Zdanis,* supra, 195.

The character of a witness for truthfulness is relevant circumstantial evidence on the question of the truth of the testimony that witness gives. This is particularly true when the testimony of the witness under attack is critical, as in the case of an alibi witness. The questions asked of Raab concerning his cheating on his income taxes were designed to elicit facts having a logical tendency to indicate a lack of veracity. "The trial court has broad discretion in ruling on questions of relevance." *State* v. *Smith,* 174 Conn. 118, 122, 384 A.2d

347 (1977); *State* v. *Rose,* 168 Conn. 623, 636, 362 A.2d 813 (1975). There was, therefore, no abuse of the trial court's discretion.

## III

The defendant takes issue with several of the trial court's other evidentiary rulings. First, extensive testimony concerning the defendant's purchase of a pistol and his subsequent report of its theft just prior to the shooting was allowed as evidence. The defendant argues that this evidence was irrelevant and prejudicial.

Trial courts have broad discretion in determining the relevancy of evidence. *State* v. *Piskorski,* 177 Conn. 677, 695, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). "Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience." (Citations omitted.) *State* v. *Schaffer,* 168 Conn. 309, 317, 362 A.2d 893 (1975), quoting *Federated Department Stores, Inc.* v. *Board of Tax Review,* 162 Conn. 77, 82, 291 A.2d 715 (1971).

The evidence that the defendant had acquired the means of committing the crime was evidence that would logically tend to render more probable Biancheri's identification of the defendant as his

assailant. It tended also to corroborate the other direct testimony that shell casings found at the scene of the shooting probably came from a gun of the type purchased by the defendant. The weight to be accorded the evidence was properly for the consideration of the jury. *State* v. *Brown,* 168 Conn. 610, 617–18, 362 A.2d 910 (1975). We find no abuse of discretion in the trial court's ruling that the testimony concerning the gun was relevant and that its probative value outweighed any possible prejudicial effect. See *State* v. *Paoletto,* 181 Conn. 172, 184–86, 434 A.2d 954 (1980).

The defendant also argues that it was error to allow a witness who had no specialized training in forensic ballistic analysis to give an opinion. The determination of the qualifications of an expert to render an opinion rests within the sound discretion of the trial court. *State* v. *Romano,* 165 Conn. 239, 249, 332 A.2d 64 (1973). The witness testified that he was a gun shop owner who had been buying, selling, trading and repairing firearms, ammunition, and related accesories for more than twenty-five years. On the basis of this testimony, the witness "could reasonably be viewed as possessing special skill or knowledge beyond the ken of the ordinary person which would be of aid to the jury in determining the questions at issue." (Citations omitted.) *State* v. *Cosgrove,* 181 Conn. 562, 588, 436 A.2d 33 (1980). The trial court did not abuse its broad discretion in allowing the witness to give an opinion as to the type of gun used in the shooting.

Officer Richard Schwartz testified that on the morning of the shooting, at about 5 a.m., he saw the defendant get into a white Chevrolet Nova driven by Borawski. He also testified that he recalled that the defendant was wearing dungarees, some type of denim jacket with a fleece lining, and a knit cap. This description of what the defendant was wearing on the day in question strongly corroborated what Biancheri said his

assailant was wearing. The state next asked Schwartz whether "anything unusual" made him recall the events of that morning. The witness answered by saying that it was "brought to my attention by the Sergeant. . . ." The defendant's immediate objection to the proposed answer as hearsay was sustained by the trial court.

On cross-examination, Schwartz explained that although his description of the defendant's clothing did not appear in either of the two police reports he had filed in connection with his investigation, he was, at the time of trial, "going by memory." Defense counsel then extensively cross-examined Schwartz concerning his recall of other events to "test his memory."

On redirect examination, the state asked the witness why it was he could specifically recall what the defendant was wearing. Schwartz testified, over another objection that the answer was hearsay, that two events, first his reading of something in a newspaper and then his reading of a police sergeant's report, "triggered" his recollection.

The defendant claims that Schwartz's testimony about reading the newspaper and the sergeant's report was inadmissible hearsay. However, as the state indicated in response to the hearsay objections during both direct and redirect examination, the testimony was not offered to prove the truth of the matters asserted but rather to explain the reasons for Schwartz's limited recollection.

An out-of-court statement is hearsay when it is offered to establish the truth of the matters contained therein. *State* v. *Packard,* 184 Conn. 258, 274, 439 A.2d 983 (1981). The challenged testimony was admitted for the limited purpose of explaining why the witness was able to recall certain details and not others. Such evidence is admissible not as an exception to the hearsay rule, but because it is not within the rule. *State* v.

*Romano,* 165 Conn. 239, 249, 332 A.2d 64 (1973); *State* v. *DeNegris,* 153 Conn. 5, 12, 212 A.2d 894 (1965); *State* v. *Tolisano,* 136 Conn. 210, 214–15, 70 A.2d 118 (1949). Defense counsel had ample opportunity to challenge Schwartz's recollection on cross-examination. It is of no moment that the trial court initially refused to allow the answers on direct examination. There was no error in admitting the nonhearsay testimony.

The relevant facts pertaining to the defendant's further claim are as follows. On the morning of the shooting, Jose Concepcion, a neighbor of Biancheri's, saw two men in a light colored Chevrolet parked near Biancheri's house. Because it was unusual for a strange car to be parked there at about 6:30 a.m., Concepcion wrote down the number of the license plate on a piece of paper. On January 1, 1982, after reading a newspaper article about the shooting, he telephoned Lieutenant Thomas Reedy of the Norwalk police department. He described what he had seen, and also told Reedy the number of the license plate. Concepcion could not remember the license number at the time of trial. He had not saved the paper on which the number was written. Reedy reported the number on the license plate, together with the other information he had received from Concepcion, to Detective Theodore Bishop, one of the case investigators. Reedy, too, could not remember the license number at trial. He had not kept his notes.

When Bishop was called as a witness for the state, an objection was raised by defense counsel as to the testimony he might give. Thereafter, an offer of proof of Bishop's testimony was made by the state outside the presence of the jury. Bishop testified that he had a conversation with Reedy on January 1, 1982. Reedy gave him certain information concerning a motor vehicle which Bishop recorded in a written report. Bishop testified that the report was made at the time or shortly

after the time that Reedy gave him the information and that the report accurately reflected the information that was given to him. When asked whether he recalled, from memory, the exact information given to him by Reedy, he replied that Reedy told him "that [Reedy] had gotten information from a subject, that a car was parked on Allview Avenue with two subjects in it," and that Reedy gave him a license plate, but that Bishop could not, at the time of his testifying, remember that number. The state showed Bishop a written police report which Bishop recognized to be the report he had made in which he had recorded the license plate number given to him by Reedy. The state then indicated that it intended, in the presence of the jury, to offer the report into evidence. The defendant objected, claiming that the report was hearsay. The trial court overruled the objection and an exception was noted.

Bishop repeated his testimony in the jury's presence. The defendant renewed his objection which was again overruled. Bishop's report was marked as state's exhibit M, but only the portion that related to the license plate number was made a full exhibit for consideration by the jury. Motor vehicle department records later identified Borawski as the owner of the vehicle with that license plate number.

To be admissible under the business record exception of General Statutes § 52-180, "the business record must be one based upon the entrant's own observations or upon information transmitted to him by an observer whose business duty it was to transmit it to him." *D'Amato* v. *Johnston,* 140 Conn. 54, 59, 97 A.2d 893 (1953). Statements obtained from volunteers are not admissible though included in a business record because it is the duty to report in a business context which provides the reliability to justify this hearsay exception. Id. Information in a business record obtained from a

person with no duty to report is admissible only if it falls within another hearsay exception. *State* v. *Palozie,* 165 Conn. 288, 295, 334 A.2d 468 (1973).

There is no dispute that once Reedy received the information from Concepcion, he had a business duty to report it to Bishop who, in turn, had a duty to enter that information in a report. The information, however, was based not on the personal knowledge of Reedy, but rather on that of a volunteer who had no business duty to report to either Reedy or Bishop. The report was admissible only if the information given to Reedy by Concepcion was independently admissible.

"[H]earsay may be admitted if there is a sufficient probability that the statement is reliable and trustworthy, if the evidence contained in the statement is necessary to resolution of the case, and if the trial court concludes that admitting the statement is in the interests of justice. 5 Wigmore, Evidence (Chadbourn Rev. 1974) § 1422, pp. 253–54. Some types of admissible hearsay occur frequently enough that certain defined exceptions to the general rule of inadmissibility have come to be recognized." *State* v. *Stepney,* 191 Conn. 233, 249–50, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). The unique factual situation presented in this case does not fall neatly into one of the traditional exceptions to the hearsay rule. Therefore, our analysis must focus on (1) whether there was a reasonable necessity for the admission of the statement, and (2) whether the statement was supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions. See *State* v. *Acquin,* 187 Conn. 647, 680, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983); *State* v. *Reardon,* 172 Conn. 593, 598, 376 A.2d 65 (1977); Tait & LaPlante,

Connecticut Evidence (1984 Sup.) § 11.25; see also Fed. R. Evid., rules 803 (24), 804 (b) (5).

Wigmore explains that the necessity requirement is met when, unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead or otherwise unavailable, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources. Wigmore, supra, § 1421. In this case, the evidence of the license plate number would have been lost entirely but for Concepcion's statement. Certainly, Concepcion could not have been expected to remember a number he had written down over a year prior to the trial. Nor is there any question of the importance of this evidence. The defendant admits that Concepcion's statement, combined with the other evidence produced at trial, strongly supported Biancheri's identification of the defendant.

The circumstantial probability of trustworthiness and reliability can be found in a variety of situations. One example is "[w]here the circumstances are such that a sincere and accurate statement would naturally be uttered, and no plan of falsification be formed." Such a statement is considered sufficiently trustworthy to be admissible despite the inability to cross-examine the declarant in the traditional sense. Wigmore, supra, § 1422. Concepcion, who knew neither the defendant nor Borawski, would have had no reason to offer the police a false statement. To the contrary, he was merely reporting a suspicious occurrence. Furthermore, he was a witness at the trial and available for cross-examination as to his ability to perceive the license plate and whether he wrote the number down and related it accurately to Reedy.

"There is no procedural canon against the exercise of common sense in deciding the admissibility of hear-

say evidence." *Dallas County* v. *Commercial Union Assurance Co.*, 286 F.2d 388, 397 (5th Cir. 1961). In balancing the technical rules of evidence against the necessity for this apparently trustworthy evidence, the trial court could have correctly concluded that the statement should be admitted "in the interests of justice." *State* v. *Stepney,* supra, 249–50. Under the particular circumstances of this case, we hold that the hearsay statement was admissible because it contained sufficient indicia of reliability and trustworthiness and because it was necessary to the resolution of the case.

## IV

Finally, the defendant argues that the trial court, in charging upon the crime of assault in the first degree, erred in failing to instruct the jury on the statutory definition of "pistol" and in denying his motion for judgment of acquittal, which was based on the state's failure to prove that the weapon was a "pistol."

In the information filed against the defendant, the state charged that the assault was committed with a deadly weapon, to wit: a "pistol," which is defined in § 53a-3 (18) of the General Statutes as "any firearm having a barrel less than twelve inches." The defendant claims that because there was no testimony that the gun used by Biancheri's assailant had a barrel less than twelve inches, he was entitled to a judgment of acquittal at the close of the state's case because the state failed to prove beyond a reasonable doubt an element of the crime charged. He also claims that the trial court erred in its instructions to the jury in failing to charge on the statutory definition of a "pistol."

The second count of the information charged the defendant with the intentional infliction of a serious physical injury on another person by means of a deadly weapon, to wit, a pistol. Neither the information nor the evidence suggested that the assault occurred in any

manner other than by the use of a deadly weapon. "It is fundamental that the state has the burden of proving all the necessary elements of a crime beyond a reasonable doubt." (Citations omitted.) *State* v. *Brown,* 173 Conn. 254, 260, 377 A.2d 268 (1977). The elements of the crime charged must guide us here. One of the necessary elements was that the weapon used was a deadly weapon.[6] "Deadly weapon" is defined in General Statutes § 53a-3 (6) as "any weapon, whether loaded or unloaded, from which a shot may be discharged . . . ." The statute does not include as a necessary element that the deadly weapon used be a pistol. The use of the term "pistol" in the information was merely descriptive and not a necessary element of first degree assault.

The defendant's reliance on *State* v. *Brown,* supra, is misplaced. The defendant in *Brown* was charged with carrying a pistol without a permit in violation of § 29-35 of the General Statutes. That statute specifically requires proof of a particular type of weapon, a pistol or a revolver. Consequently, when the state failed to introduce any evidence that the barrel of the firearm the defendant was carrying was less than twelve inches in length, a necessary element of the crime charged, the judgment as to that offense was set aside. *State* v. *Brown,* supra, 260–61.

Here, there was extensive evidence presented that the weapon used in the assault was a gun. Two experts testified that ejected cartridges found at the scene of the crime were probably fired from a high standard .22 caliber pistol, although it was possible that they might come from another type of gun. The victim testified that he was shot with "a long gun . . . maybe a cut-off rifle or a long barrel." There was also evidence that the defendant purchased a high standard .22 caliber pistol just five days prior to the shooting. Thus, there

---

[6] See footnote 2, supra.

was more than sufficient evidence to prove that the weapon used was a deadly weapon from which a shot could be discharged.

The trial court, therefore, did not err in its denial of the defendant's motion for judgment of acquittal. Nor did the trial court err when it instructed the jury in the language of the assault statute, using the term "deadly weapon" and further limiting that term to a "weapon from which a shot may be discharged."

There is no error.

In this opinion the other judges concurred.