## STATE OF CONNECTICUT *v.* JOHN C. ADAMS, JR.
### (AC 16738)

Spear, Hennessy and Daly, Js.

Argued January 19—officially released April 13, 1999

*Suzanne L. McAlpine*, with whom, on the brief, was *Nicole M. Fournier*, for the appellant (defendant).

*Michael E. O'Hare*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David P. Gold*, assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, John C. Adams, Jr., appeals from the judgment of conviction, following a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).[1] The defendant claims that the trial court improperly (1) instructed the jury on his claim of self-defense, (2) denied his motion for a mistrial based on prosecutorial misconduct, (3) excluded as hearsay his statements to the police following his arrest and (4) concluded that the evidence was sufficient to support his conviction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the morning of October 12, 1993, the defendant, a sixteen year old high school student, was suspended from school for excessive absences. That afternoon, the defendant went to his parents' house at 41 Maher Avenue in Hamden with his girlfriend, Teresa Schulz, where they fell asleep on the defendant's bed.

---

[1] General Statutes § 53a-55 provides in relevant part: "(a) A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person. . . ."

Sometime thereafter, the victim, John C. Adams, Sr., burst through the defendant's bedroom door, yelling at the defendant for being suspended. The victim left the defendant's bedroom without touching him. The defendant followed the victim to tell him not to enter his room without knocking. In response, the victim yelled obscenities at the defendant, grabbed him by the neck and threw him against the bathroom door.

The defendant returned to his bedroom where Schulz noticed red marks on his neck and blood coming from his mouth. The defendant picked up a knife from his dresser and put it in his back pocket. The defendant then left his bedroom and became involved in an altercation with the victim in which the defendant stabbed the victim sixteen times. Five of the stab wounds penetrated the victim's chest, causing his death.

After stabbing the victim, the defendant ran outside to a nearby baseball field. Schulz then went outside to find him. After Schulz found the defendant, they went to a nearby convenience store to call the police. On the way to the store, the defendant threw his knife into a wooded area. The defendant and Schulz returned to the defendant's house and then took the police to where the defendant had thrown the knife. The defendant was subsequently arrested and convicted. This appeal followed.

I

The defendant first claims that the trial court improperly instructed the jury on his claim of self-defense. Specifically, the defendant claims that the trial court misled the jury by (1) marshaling the evidence in favor of the state, (2) improperly instructing the jury on the definition of the dwelling exception to his duty to retreat before using deadly force and (3) improperly instructing the jury on the "subjective-objective test" of self-defense.

Additional facts are necessary to our resolution of these claims. The trial court instructed the jury on the defendant's duty to retreat before using deadly force in self-defense. The trial court then instructed the jury that "there is an exception to the duty to retreat. Our law says that a person is not required to retreat if he is in his dwelling and he was not the initial aggressor. However, if both antagonists have the same dwelling, the defendant does have a duty to retreat . . . . Dwelling is defined as a building which is usually occupied by a person lodging therein at night, whether or not a person is actually present. A resident is one who resides in a place, one who dwells in a place for a period of some duration. The definition of dwelling requires usual customary or routine occupancy. In short, in the words of our Supreme Court, occupation for some period of duration."

"In determining whether 41 Maher Avenue was the victim's dwelling, you should look at whether he occupied this house for some period of duration at or about the time in question. . . . There was testimony in this case that the victim was married to Jane Adams, that he owned the house, that he had the key to the house, that because of difficulties they agreed that he would not stay there over the long weekends of Friday, Saturday, Sunday and Monday, but that he would stay there Tuesday, Wednesday, Thursday or would be able to if he wished. Mrs. Adams testified that she did not always know, however, when he was coming or not coming. There is evidence that the incident in question occurred on October 12, 1993, which was, I am informed, a Tuesday, which was one of the victim's agreed days at the house."

"Our standard of review in cases when the defendant claims that the instructions violate constitutional due process protection[s] is whether the jury instructions were so deficient that it was reasonably possible that

the jury was misled." *State* v. *Patterson*, 35 Conn. App. 405, 416, 646 A.2d 258, cert. denied, 231 Conn. 930, 649 A.2d 254 (1994). "To pass constitutional muster, jury instructions must be correct in law, adapted to the issues in the case and sufficient to guide the jury in arriving at a verdict." Id., 417.

A

The defendant claims that the trial court misled the jury by marshaling "the evidence solely in favor of the state and essentially taking away from the jury the factual question of whether 41 Maher Avenue was, in fact, [the victim's] dwelling."

Additional facts are necessary to our resolution of this claim. After the trial court instructed the jury on the dwelling exception to the duty to retreat, the defendant objected to the instruction, claiming that the trial court marshaled the evidence in favor of the state. The next day, the jury, after beginning its deliberations, requested a further "detailed explanation of self-defense." The trial court granted the jury's request and provided essentially the same charge, but did not marshal the evidence on the issue of whether 41 Maher Avenue was the victim's dwelling. The trial court then instructed the jury to disregard any facts that it had provided in its initial charge and instructed the jury that only the jury's recollection of the facts mattered when deliberating.

General Statutes § 53a-19 (a) provides that a person is justified in using deadly physical force upon another person to defend himself when the actor reasonably believes that another person is "(1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." Nonetheless, "a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if

he is in his dwelling . . . ." General Statutes § 53a-19 (b). The dwelling exception does not apply, however, if the actor is "threatened by another person who also dwells in the same place." *State* v. *Shaw*, 185 Conn. 372, 379, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982).

"A trial court has broad discretion to comment on the evidence adduced in a criminal trial. . . . A trial court often has not only the right, but also the duty to comment on the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 218 Conn. 458, 461–62, 590 A.2d 112 (1991). "The purpose of marshalling the evidence, a more elaborate manner of judicial commentary, is to provide a fair summary of the evidence, and nothing more; to attain that purpose, the [trial] judge must show strict impartiality. . . . To avoid the danger of improper influence on the jury, a recitation of the evidence should not be so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserve equal attention." (Citations omitted; internal quotation marks omitted.) Id., 462.

We conclude that the trial court properly marshaled the evidence and did not, contrary to the defendant's claim, "create a one-sided rendition of the case that was prejudicially unfair to the defendant." For example, even though the trial court said that the state presented evidence that the victim dwelled at 41 Maher Avenue, it then said that the defendant provided evidence that the victim's wife did not always know when the victim would be staying at the house. Moreover, the trial court instructed the jury that it was to disregard the trial court's recitation of the facts and was to rely solely on its own recollection of the facts. "The jury is presumed, in the absence of a fair indication to the contrary, to

have followed the court's instructions." *State* v. *Parris*, 219 Conn. 283, 294, 592 A.2d 943 (1991).

## B

The defendant claims that the trial court, in its charge, improperly defined dwelling and, therefore, misled the jury. We are not persuaded.[2]

General Statutes § 53a-100 (a) (2) defines "dwelling" as "a building which is usually occupied by a person lodging therein at night, whether or not a person is actually present . . . ." "[Section] 53a-100 contemplates a duration element by requiring usual inhabitation at night. Usual in this context obviously means customary or routine occupancy; Webster, New Collegiate Dictionary (1974); in short, occupation for some period of duration." (Internal quotation marks omitted.) *State* v. *Bailey*, 209 Conn. 322, 343, 551 A.2d 1206 (1988).

The defendant claims that the trial court, by instructing the jury that when determining whether 41 Maher Avenue was the victim's dwelling it must determine whether the victim occupied the house "at or about the time in question," materially altered the definition and also "shortened the period of time contemplated by the court in *Bailey*." We conclude that the trial court's additional remarks neither materially altered the statutory definition of dwelling nor reduced the period of duration required by *Bailey*. Instead, the trial court merely instructed the jury to focus on whether the victim dwelled at 41 Maher Avenue at the time of the incident. Indeed, the defendant's claim that the additional comments "shortened the period of time" contemplated by the *Bailey* court is unpersuasive because

---

[2] The state claims that the defendant did not properly preserve his claims at trial. The defendant, however, filed a supplemental request to charge on the dwelling exception to the duty to retreat rule. Accordingly, we conclude that the defendant properly preserved his claims pursuant to Practice Book § 60-5. See *State* v. *Ryan*, 18 Conn. App. 602, 605, 559 A.2d 1156 (1989).

that court never suggested a period of time. Accordingly, we conclude that the trial court did not mislead the jury.

C

The defendant claims that the trial court misled the jury by improperly instructing it on the subjective-objective test of self-defense. We disagree.

The jury, when analyzing whether the defendant reasonably believed that deadly force was necessary to repel the victim's alleged attack, must apply a subjective-objective test. *State* v. *Prioleau*, 235 Conn. 274, 286, 664 A.2d 743 (1995). "The subjective-objective inquiry into the defendant's belief regarding the necessary degree of force requires that the jury make two separate affirmative determinations in order for the defendant's claim of self-defense to succeed. First, the jury must determine whether, on the basis of all of the evidence presented, the defendant in fact had believed that he had needed to use deadly physical force, as opposed to some lesser degree of force, in order to repel the victim's alleged attack. . . . The jury's initial determination, therefore, requires the jury to assess the veracity of witnesses, often including the defendant, and to determine whether the defendant's account of his belief in the necessity to use deadly force at the time of the confrontation is in fact credible. This probe into the defendant's actual state of mind clearly demonstrates the function of the jury in [its] evaluation of the self-defense claim. . . .

"If the jury determines that the defendant had not believed that he had needed to employ deadly physical force to repel the victim's attack, the jury's inquiry ends, and the defendant's self-defense claim must fail. If, however, the jury determines that the defendant in fact had believed that the use of deadly force was necessary, the jury must make a further determination as to

whether *that belief* was reasonable, from the perspective of a reasonable person in the defendant's circumstances. . . . Thus, if a jury determines that the defendant's honest belief that he had needed to use deadly force, instead of some lesser degree of force, was not a reasonable belief, the defendant is not entitled to the protection of § 53a-19." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Scarpiello*, 40 Conn. App. 189, 206–207, 670 A.2d 856, cert. denied, 236 Conn. 921, 674 A.2d 1327 (1996).

The defendant claims that the trial court's instruction "failed to adequately inform [the jurors] that their initial duty was to determine what the defendant actually believed was the amount of force necessary to repel the victim." We conclude, after examining the trial court's charge as a whole, that the defendant's claim must fail.

The defendant relies on *State* v. *Walton*, 41 Conn. App. 831, 678 A.2d 986 (1996), to support his claim that the trial court's instruction was improper. In *Walton*, this court held as improper a trial court's instruction that did not set forth a subjective-objective test of self-defense, but rather set forth a purely objective test. Conversely, the trial court here, in each of its self-defense instructions, clearly instructed the jury first to determine whether the defendant believed that he was faced with the imminent use of physical force upon him before he used physical force and then to determine whether his belief was reasonable. The trial court then informed the jury that the inquiry is a subjective-objective test and that it must "view the situation first from the subjective perspective of the defendant, but the defendant's belief then must be found to be objectively reasonable, not unreasonable or irrational." Finally, the trial court, in its second jury charge, clearly instructed the jury to apply a subjective-objective test when determining whether the defendant acted in self-defense.

The defendant further claims that the trial court diminished the importance of the subjective portion of the test by using the word "reasonable" eleven times in its charge. The defendant, however, fails to provide, nor can we find, any authority supporting his claim. Accordingly, we conclude that the trial court properly instructed the jury on the subjective-objective test.

## II

The defendant next claims that the trial court improperly denied his motion for a mistrial based on the prosecutor's misconduct. Specifically, the defendant claims that the prosecutor engaged in misconduct that "systematically eroded" the defendant's credibility by asking the defendant on cross-examination, in the presence of the jury, (1) whether he was ever arrested and (2) whether he told his mother on the morning of the incident that he was "going to be taking the knife to school." We disagree.

## A

Additional facts are necessary to our resolution of this claim. The prosecutor, during his cross-examination of the defendant, asked him whether "the police treat[ed] [him] nice" after he was arrested. The defendant responded that he had "never been in a position like that to tell you differently," to which the prosecutor responded, "well now, you've been arrested before, by the police . . . ." The defendant immediately objected, asked that the jury be excused and moved for a mistrial on the ground that the prosecutor had "tainted [the defendant] in front of the jury." The prosecutor, in response, argued that the defendant was questioned by the police before this incident, even though the questioning never led to the defendant's arrest. The trial court, after the prosecutor conducted a voir dire of the defendant, overruled the defendant's motion for mistrial. Nonetheless, the trial court, when the jury

reconvened, instructed the jury to disregard the prosecutor's question.

The defendant claims that the prosecutor's question "permanently tainted the defendant in front of the jury." We disagree.

As a general rule, the decision whether to declare a mistrial is committed to the sound discretion of the trial court. *State* v. *Wooten*, 227 Conn. 677, 693, 631 A.2d 271 (1993). "[A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice." (Citations omitted; internal quotation marks omitted.) *State* v. *Day*, 233 Conn. 813, 836–37, 661 A.2d 539 (1995).

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We must, therefore, determine whether the [actions] of the prosecutor, in light of all the circumstances . . . were so egregious and so damaging to the defendant that they deprived him of a fair trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Sivri*, 46

Conn. App. 578, 590–91, 700 A.2d 96, cert. denied, 243 Conn 938, 702 A.2d 644 (1997). In doing so, we have focused on several factors, including "the extent to which the misconduct was invited by defense conduct or argument; *State* v. *Falcone*, 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) [cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982)]; the frequency of the misconduct; *State* v. *Couture*, 194 Conn. 530, 562–63, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see *State* v. *Doehrer*, [200 Conn. 642, 654, 513 A.2d 58 (1986)]; *State* v. *Palmer*, [196 Conn. 157, 164, 491 A.2d 1075 (1985)]; the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States*, 476 A.2d 164, 172 (D.C. App. 1984); the strength of the curative measures adopted; *United States* v. *Modica*, supra, 1181; *Harris* v. *United States*, 402 F.2d 656, 657 n.1 (D.C. Cir. 1968); *State* v. *Doehrer*, supra, 654; and the strength of the state's case. See *United States* v. *Modica*, supra, 1181; *State* v. *Couture*, supra, 564; see also *State* v. *Glenn*, 194 Conn. 483, 492, 481 A.2d 741 (1984)." *State* v. *Chasse*, 51 Conn. App. 345, 355–56, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999).

We conclude that the defendant has failed to meet his burden of demonstrating "that the [prosecutor's] remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." *State* v. *Robinson*, 227 Conn. 711, 746, 631 A.2d 288 (1993). The prosecutor's question dealt with a collateral issue to the case. Indeed, although the trial court noted its disapproval of the question, it also stated that the question was a "major transgression" from the critical issues of the case. Moreover, the trial court remedied any prejudice that the defendant may have suffered by issuing a curative instruction to the jury. The defendant did not claim at trial, nor has he claimed on appeal, that

the trial court's curative instruction given to the jury was defective. "We have often held that a prompt cautionary instruction to the jury regarding improper prosecutorial remarks obviates any possible harm to the defendant." *State* v. *Sherman*, 38 Conn. App. 371, 386, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995).

## B

The defendant also claims that the prosecutor engaged in misconduct by asking the defendant whether he told his mother that he was going to take the knife to school that day. After the prosecutor resumed his cross-examination of the defendant, he asked the defendant if he told his mother that he was "going to be taking the knife to school with [him] that day." The defendant immediately objected and the trial court excused the jury. The defendant argued that the question lacked a foundation in the evidence. The prosecutor argued, however, that the defendant had told the defendant's expert witness, C. Scott Grove, a psychiatrist who had interviewed and prepared a report on the defendant, that he took the knife to school with him that day and that Grove transcribed the defendant's statement in a report.

The defendant then testified that he never told Grove that he took a knife to school that day. Defense counsel then requested that the prosecutor find in Grove's report the defendant's statement that he took a knife to school that day. The prosecutor, however, was unable to find the defendant's statement, so he withdrew the question. The trial court, after the jury returned to the courtroom, instructed the jury that it must disregard the question.

The defendant claims that the prosecutor engaged in misconduct by implying, through the improper question, that the stabbings were premeditated, thus prejudicing the defendant by weakening his self-defense

claim that hinged solely on his credibility. The defendant further claims that the prosecutor "systematically eroded [the defendant's] credibility in front of the jury" by asking the two inappropriate questions.

"A question is within the scope of the direct examination if it is designed to rebut, impeach, modify, or explain any of the defendant's direct testimony." *State* v. *Marsala*, 44 Conn. App. 84, 91, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997). " 'A good faith basis on the part of examining counsel as to the truth of the matter contained in questions propounded to a witness on cross-examination is required.' " *State* v. *Beliveau*, 237 Conn. 576, 586, 678 A.2d 924 (1996).

There was evidence that the defendant frequently carried a knife, and Schulz testified that the defendant usually carried a knife when they went to the woods together. After examining the prosecutor's question in light of the entire trial, we conclude that the question did not systematically erode the defendant's credibility in front of the jury.

### III

The defendant next claims that the trial court abused its discretion by excluding as hearsay statements that the defendant made to the police while he was in custody. Specifically, the defendant claims that the trial court improperly excluded his statements that should have been admitted under either the state of mind or the residual hearsay exception.

Additional facts are necessary to our resolution of this claim. After the Hamden police arrested the defendant, they interviewed him twice. During each interview, the defendant confessed that he stabbed the victim in self-defense. The trial court granted the state's motion in limine precluding the defendant from offering these statements into evidence. When the defendant

attempted to offer his statements into evidence, the trial court ruled that they were inadmissible hearsay.

" 'On appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. . . . Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion.' " (Citations omitted.) *State* v. *Jurgensen*, 42 Conn. App. 751, 754, 681 A.2d 981, cert. denied, 239 Conn. 931, 683 A.2d 398 (1996). Hearsay is an out-of-court statement that is offered to establish the truth of the matters contained therein. *State* v. *Sharpe*, 195 Conn. 651, 661, 491 A.2d 345 (1985).

The defendant claims that the trial court abused its discretion by excluding his statements because the statements should have been admitted under the state of mind exception to the hearsay rule in order to demonstrate that he stabbed the victim in self-defense. "It is well established that [a]n out-of-court statement is not hearsay . . . if it is offered to illustrate circumstantially the declarant's then present state of mind, rather than to prove the truth of the matter asserted." (Internal quotation marks omitted.) *Eisenbach* v. *Downey*, 45 Conn. App. 165, 180, 694 A.2d 1376, cert. denied, 241 Conn. 926, 696 A.2d 1264 (1997). However, "[s]tatements by an accused '*after the act*, stating the *past intent or motive* at the time of the act' are inadmissible under the state of mind exception to the hearsay rule." (Emphasis in original.) *State* v. *Freeney*, 228 Conn. 582, 595, 637 A.2d 1088 (1994). We conclude that in the present case the trial court did not abuse its discretion by excluding the defendant's postarrest statements as inadmissible hearsay not falling within the state of mind exception.

The defendant also claims that the trial court abused its discretion by not admitting the defendant's hearsay statements under the residual, or catch-all, exception

to the hearsay rule. A court may admit hearsay under the residual exception if (1) there was a reasonable necessity for the admission of the statement, and (2) the statement was supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions. *State* v. *Sharpe*, supra 195 Conn. 664.

We conclude that the trial court did not abuse its discretion by excluding the defendant's postarrest statements under the residual hearsay exception, as there was not a reasonable necessity for the admission of the statements. "[T]he necessity requirement is met when, unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead or otherwise unavailable, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources." Id., 665. Here, the defendant was available to testify. We conclude, therefore, that the necessity requirement of *Sharpe* was not met in this case. Accordingly, the trial court properly excluded the defendant's statements under the residual hearsay exception.

Even if we were to conclude that the defendant's statements were reasonably necessary, the statements were not sufficiently reliable or trustworthy, as *Sharpe* requires. The record reveals that the defendant, after stabbing the victim, understood the nature of his actions and had enough time to formulate a self-defense claim. This is not a situation where "the circumstances are such that a sincere and accurate statement would naturally be uttered, and no plan of falsification be formed." (Internal quotation marks omitted.) Id., 665. If the trial court had admitted the defendant's unreliable and untrustworthy statements, the state would have been unable to cross-examine the defendant as to those statements if the defendant chose not to testify. Accordingly, we conclude that the defendant's hearsay statement

was not sufficiently reliable and trustworthy to be admitted under the residual hearsay exception.

## IV

The defendant's final claim is that the evidence was insufficient to support his conviction. Specifically, the defendant claims that the state failed to present evidence from which a jury could conclude beyond a reasonable doubt that the defendant was guilty of manslaughter in the first degree. We disagree.

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all reasonable inferences that it yields, a trier of fact could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Teti*, 50 Conn. App. 34, 38, 716 A.2d 931, cert. denied, 247 Conn. 921, 722 A.2d 812 (1998).

The defendant was charged with manslaughter in the first degree. The state, to establish a violation of manslaughter in the first degree, must prove that the accused, "under circumstances evincing an extreme indifference to human life . . . recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." General Statutes § 53a-55 (a) (3).

The defendant claims that the state's evidence failed (1) to prove that "the defendant acted with intent to cause serious physical injury to another person or that he acted with reckless disregard for human life," (2) to disprove the defendant's assertion of self-defense and (3) to "prove that the defendant had a duty to retreat or that he knew he could retreat with complete safety." The defendant's contentions are without merit.

First, the evidence was sufficient to prove that the defendant was guilty of manslaughter in the first degree. The defendant does not dispute that he stabbed the victim sixteen times in causing the victim's death. Further, the state presented evidence that the defendant was angry and started an altercation with the victim. Accordingly, we conclude that the evidence was sufficient for the jury to find that the defendant recklessly engaged in conduct that created a grave risk of death under circumstances evincing an extreme indifference to human life.

Second, the jury reasonably could have rejected the defendant's claim of self-defense. The evidence presented was such that the jury was free to disbelieve the defendant's claim of self-defense and to conclude beyond a reasonable doubt that he could not reasonably have believed that he was faced with the imminent use of physical force by the victim or that the degree of physical force that he used against the victim was necessary to defend himself. See *State* v. *Ash*, 33 Conn. App. 782, 789, 638 A.2d 633, rev'd on other grounds, 231 Conn. 484, 651 A.2d 247 (1994). The jury, from the evidence presented, reasonably could have concluded that the defendant was the initial aggressor of the attack and, therefore, did not act in self-defense. Further, the jury had evidence before it indicating that the defendant did not believe that the victim was using or about to use deadly physical force or inflict great bodily harm. Indeed, the evidence indicated that the victim never attempted to use deadly physical force on the defendant in the past and did not indicate that the defendant intended to use deadly force on the day of the incident. The jury's role as trier of fact is to draw reasonable and logical inferences from the facts as it finds them to exist. *State* v. *Gray*, 221 Conn. 713, 721, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992).

Third, the evidence supports the jury's conclusion that the defendant had a duty to retreat or that he knew that he could retreat with complete safety. The jury reasonably could have concluded that the defendant could have escaped from the victim's grasp and retreated. The defendant then easily could have run out the front door to complete safety. Indeed, the defendant, after stabbing the victim, ran out the front door to a nearby baseball field.

Accordingly, we conclude that the defendant's claims of insufficient evidence are without merit.

The judgment is affirmed.

In this opinion the other judges concurred.