STATE OF CONNECTICUT *v.* RICHARD SAUCIER
(AC 25038)

Lavery, C. J., and McLachlan and Gruendel, Js.

Argued February 16—officially released July 12, 2005

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Christine Collyer*, special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Robin A. Lipsky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Richard Saucier, appeals from the judgment of conviction, rendered following a jury trial, of four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A). On appeal, the defendant claims that the trial court improperly (1) prohibited him from cross-examining the victim[1] about her 2000 federal income tax return, (2) prohibited him from presenting the victim's alias to the jury and from testifying about the victim's use of an alias to avoid creditors, and (3) excluded as hearsay a statement made by the victim. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 10, 2002, the defendant telephoned the victim and asked her to cover a shift as a bartender at a restaurant. The victim agreed and later was picked up by the defendant, who drove her to work. Following her shift, the victim drove with the defendant to a friend's house, where they smoked marijuana. The two left after twenty minutes. The victim was under the impression that the defendant was going to drive her home. Instead, he drove her to a deserted tractor-trailer park, then to a highway underpass and finally to his home. The defendant brutally and repeatedly sexually assaulted the victim at each location. Early the next morning, after the defendant had fallen asleep, the vic-

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

tim escaped and ran virtually naked to a nearby business, where the police were called. The police took the victim to a hospital, stopping briefly en route in order for the victim to point out the defendant's home. Additional facts will be set forth as necessary.

I

The defendant claims that the court violated his sixth amendment right to confront witnesses by prohibiting him from cross-examining the victim about her 2000 federal income tax return. We disagree.

While cross-examining the victim, defense counsel delved into her financial affairs. After eliciting testimony from the victim that as a bartender at the restaurant, tips were her primary source of income, defense counsel inquired whether she had reported those tips on her federal income tax returns. The victim responded: "I'm not sure. I can't remember. Maybe. I think I did. I'm not sure." A few questions later, defense counsel asked the victim: "Then, in the year 2001, prior to April 15, 2001, did you file a federal income tax return for any wages earned during—" At that point, the state objected on the ground of relevance, arguing that defense counsel was "fishing." The court excused the jury, after which defense counsel explained that the victim's failure to report income on her tax returns pertained to her credibility. The court then heard the following offer of proof:

"[Defense Counsel]: Ma'am, did you file a tax return for the year 2000?

"[The Witness]: I don't know. When I came here, I was nineteen. That's when I first started working. I believe [that was] the first year I filed, I'm not sure, to tell you the truth. I can't remember. I'd have to go back and check. I'm sure—I know I did file taxes some years.

I don't know if I—I really can't say. I know I have filed taxes before."

Following the offer of proof, the court asked defense counsel whether he had a good faith basis to believe that the victim had neglected to file a tax return for that year. Defense counsel answered that he did indeed have a good faith basis, namely, that the defendant told him that the victim had worked under the table at the restaurant. The court then sustained the state's objection, reasoning as follows: "Number one, at this point, I do understand the point of the question, but the information that she's processed gives me no basis and, two, from the source of where it's coming from, the court has some questions as to whether there's a basis for asking that question." The court also noted that it already had allowed some questions regarding the topic and that the right to cross-examination is not unfettered.

"We traditionally apply a two part analysis to determine whether a party has been deprived of effective cross-examination. First, we determine whether the defendant received the minimum opportunity for cross-examination of adverse witnesses required by the constitution. . . . If so, we then consider whether the trial court's restriction of cross-examination amounted to an abuse of discretion under the rules of evidence. . . . [T]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . This right, however, is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. . . . The trial court, in its discretion, may impose limitations on the scope of cross-examination, as long as the defendant has been permitted sufficient cross-examination to satisfy constitutional require-

ments. . . . The confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination." (Internal quotation marks omitted.) *State* v. *Howard F.*, 86 Conn. App. 702, 716, 862 A.2d 331 (2004), cert. denied, 273 Conn. 924, 871 A.2d 1032 (2005).

The first question, therefore, is whether the defendant's cross-examination of the victim satisfied the constitutional standards required by the sixth amendment. See *State* v. *Brown*, 273 Conn. 330, 340, 869 A.2d 1224 (2005). "The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) Id., 339–40. "[W]e consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) Id., 340. Here, although the court disallowed a question in a legitimate field of inquiry; see *State* v. *Morgan*, 70 Conn. App. 255, 274, 797 A.2d 616 ("questions asked of a witness regarding whether he or she has cheated on his or her income taxes may be permissible to demonstrate a lack of veracity"), cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002); that field of inquiry already was covered adequately by questions that the court had allowed. As noted previously, defense counsel was allowed to ask the victim how she was paid while working as a bartender at the restaurant, whether the tips she received were her primary source of income and whether she had disclosed those tips on her federal income tax returns. Her evasive and equivocal response to the third question—"I'm not sure. I can't remember. Maybe. I think I did. I'm not sure"—permitted the defendant to

expose to the jury facts from which the jurors could appropriately draw inferences relating to the reliability of the witness. See *State* v. *Brown*, supra, 341. Moreover, defense counsel elicited, before the jury, testimony from the victim that she had used different names throughout her lifetime, that she had smoked marijuana and consumed alcohol on the day in question and that she had smoked marijuana in the past. Accordingly, we conclude that the defendant's cross-examination of the victim met the constitutional standards required by the confrontation clause.

The second question is whether the court nonetheless abused its discretion by prohibiting the defendant from cross-examining the victim about her tax return. See id. "The right to cross-examine a witness concerning specific acts of misconduct is limited in three distinct ways. First, cross-examination may only extend to specific acts of misconduct other than a felony conviction if those acts bear a special significance upon the issues of veracity . . . . Second, [w]hether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discretion of the trial court. . . . Third, extrinsic evidence of such acts is inadmissible." (Internal quotation marks omitted.) *State* v. *Morgan*, supra, 70 Conn. App. 272–73, citing, inter alia, Conn. Code Evid. § 6-6 (b).

"Despite the fact that our Supreme Court has held that questions asked of a witness regarding whether he or she has cheated on his or her income taxes may be permissible to demonstrate a lack of veracity; see *State* v. *Sharpe*, 195 Conn. 651, 658–59, 491 A.2d 345 (1985); such questions are not permissible automatically." *State* v. *Morgan*, supra, 70 Conn. App. 274. Here, we find no reason to second-guess the court's evidentiary ruling regarding the victim's tax return because it was made following the introduction of ample evidence related to the victim's credibility. See id. Indeed, as already

noted, defense counsel elicited, before the jury, testimony from the victim that she was unsure whether she had disclosed the tips on her federal income tax returns, that she had used different names throughout her lifetime, that she had smoked marijuana and consumed alcohol on the day in question and that she had smoked marijuana in the past. Accordingly, we conclude that the court did not abuse its discretion by prohibiting the defendant from cross-examining the victim about her 2000 federal income tax return.

## II

The defendant next claims that the court violated his sixth amendment right to present a defense by prohibiting him from presenting the victim's alias to the jury and from testifying about the victim's use of an alias to avoid creditors. We disagree.

At trial, the court indicated that it would follow General Statutes § 54-86e and not disclose the victim's name on the record. Nevertheless, while cross-examining the victim, defense counsel sought to show that she had gone by different names during her lifetime. After a few preliminary questions pertinent to that line of inquiry, defense counsel offered as a full exhibit a document that identified the victim's name. The court immediately excused the jury. At that point, the state voiced its objection to the admission of the exhibit, and defense counsel countered that the exhibit was essential because the victim's multiple identities had a direct bearing on her credibility as a witness. The court sustained the state's objection, subject to reargument at a later time, but allowed defense counsel to continue to cross-examine the victim regarding her use of multiple names. When cross-examination resumed, the victim explained that when she reached the age of nine, her mother changed her first name. Around that time, the victim's mother remarried, so the victim's last name

also was changed. Roughly ten years later, the victim changed her name through a Probate Court, reclaiming her original first name, but maintaining her stepfather's last name.

On direct examination of the defendant, defense counsel embarked on the same line of inquiry. After eliciting testimony from the defendant that the victim initially had introduced herself to him using a last name other than the one she was using at trial, defense counsel asked to be heard outside the presence of the jury. Once the jury was excused, he argued that the victim's other name should be introduced to the jury because "[p]eople like to have a name associated with a person rather than just somebody simply saying they used a different name." The court asked whether there was anything about the name, in and of itself, that affected the victim's credibility. Defense counsel replied: "In and of itself, I would have to agree with the court. In and of itself, it's not going to make a difference . . . ." Noting that defense counsel already had elicited testimony before the jury as to the victim's use of different names and that there did not exist sufficient reason to deviate from § 54-86e, the court sustained the state's objection.

Immediately thereafter, defense counsel voiced his intent to ask the defendant "why there was use of a different name." The court requested an offer of proof, so defense counsel asked the defendant, inter alia, "Mr. Saucier, why was there use of a different name by [the victim]?" His response: "The only thing I can think of are the bills she had piled up. She was more or less trying to get away from one side or the other." The state objected on the ground that the defendant's answer was speculative, and the court agreed, sustaining the state's objection "as to the only thing I can think of is, it's for bills." The court nevertheless permitted the defendant to testify that he saw different names on different pieces

of mail in the victim's apartment. Specifically, the court ruled: "I'll allow the question: Did you see that other name on other correspondence that he observed? And he can answer that. But he's not going to get into, 'I saw bills,' because we don't know if they're bills or not."

"The sixth amendment to the United States constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, [a defendant] must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated. . . . Finally, [t]he determination of whether a matter is relevant to a material issue [in the proceeding] . . . rests within the sound discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *State* v. *Wright*, 273 Conn. 418, 424–25, 870 A.2d 1039 (2005).

In support of his claim that the court improperly prohibited him from presenting the victim's alias to the jury, the defendant argues that the jury never "heard the specific name, which would have lent credence to the defendant's claim." Unfortunately, the defendant does not explain *at all* just how the specific name would have done so. Moreover, when the court, concerned with maintaining the victim's privacy interest pursuant to § 54-86e, asked defense counsel whether there was anything about the specific name that affected the victim's credibility, counsel conceded that there was not, stating: "In and of itself, I would have to agree with the court. In and of itself, it's not going to make a difference . . . ." We agree that introduction of the specific name was not relevant to the victim's credibility as a witness

and, therefore, conclude that the court did not abuse its discretion by prohibiting the defendant from presenting that name to the jury.

The defendant also claims that court improperly prohibited him from testifying about the victim's use of an alias to avoid creditors. As stated previously, in an offer of proof, defense counsel asked the defendant why the victim used an alias, to which he replied: *"The only thing I can think of* are the bills she had piled up. She was more or less trying to get away from one side or the other." (Emphasis added.) The state objected to the defendant's testimony on the ground that it was speculative, and the court agreed, sustaining the state's objection. The defendant now argues that "[t]he jury only heard benign reasons for the victim using an alias" and that "it never heard the damaging reason proffered by the defendant," namely, to avoid creditors. We find no merit to the defendant's claim that the court erred by not accepting the defendant's testimony. On the basis of the facts and circumstances of this case, the court was justified in excluding the proffered evidence as speculative and irrelevant. We reiterate that "trial courts are vested with broad discretion in rulings on relevancy and every reasonable presumption must be given in favor of the court's ruling. . . . Rulings on such matters will be disturbed on appeal only upon a showing of a clear abuse of discretion." (Internal quotation marks omitted.) *State* v. *Peeler*, 267 Conn. 611, 635, 841 A.2d 181 (2004). Such an abuse did not exist in this case.

The defendant's constitutional claim that he was prohibited from presenting a defense by the court's exclusion of the proffered evidence first required him to show that the exclusion was improper. See *State* v. *Saunders*, 267 Conn. 363, 383, 838 A.2d 186, cert. denied, 541 U.S. 1036, 124 S. Ct. 2113, 158 L. Ed. 2d 722 (2004). Because we conclude that the court did not abuse its

discretion in excluding the proffered evidence, it follows that the defendant's constitutional right to present a defense was not violated.

## III

The defendant finally claims that the court improperly excluded as hearsay a statement made by the victim. We disagree.

At trial, the defendant sought to call John J. Hoban to testify as a witness on his behalf. The court allowed Hoban to testify out of the jury's presence so that it could rule on the admissibility of his testimony. In an offer of proof, defense counsel cautioned Hoban to refrain from mentioning the victim's last name, to which Hoban replied that he did not even know her last name. Nevertheless, he went on to testify that he had known the victim for a couple of years, that he and she were friends, and that she often confided in him. Defense counsel then made the following offer of proof:

"[Defense Counsel]: Now, directing your attention, sir, to the day after January 10, 2002, did [the victim] confide something in you on that date?

"[The Witness]: I got a call in the morning from her.

"[Defense Counsel]: What did she confide in you, sir?

"[The Witness]: I didn't understand it, but she says, I got him. I got him good.

"[Defense Counsel]: What did you respond to that?

"[The Witness]: I said . . . what are you talking about? I got Richie. I got him good. And she hung up.

"[Defense Counsel]: That was it?

"[The Witness]: Yeah. And I didn't know what she was talking about."

Following that colloquy, the state objected to the admissibility of the victim's statement, and the court inquired as to defense counsel's claim for its admissibility. Defense counsel argued that the statement was admissible under the state of mind and residual exceptions to the hearsay rule, and as a prior inconsistent statement of the victim offered to impeach her credibility. The court rejected each argument, concluding, first, that the state of mind exception to the hearsay rule requires that the statement refer to a present—not, as here, a past—condition; second, that because defense counsel never inquired of the victim during cross-examination whether she made the statement, no foundation had been laid for its admission as a prior inconsistent statement; and third, that the statement was inadmissible under the residual exception to the hearsay rule because it lacked an indicia of reliability—Hoban claimed to be a confidant of the victim, yet he did not even know her last name—and it was ambiguous, creating more questions than it answered. For those reasons, the court sustained the state's objection to the admissibility of the victim's alleged statement. The defendant now claims that the court's ruling was improper because the victim's statement should have been admitted under the state of mind exception to the hearsay rule on the ground that the statement, which was made within one day of the alleged incident, indicated the victim's then present knowledge that her accusations were fabricated and that, presumably, her state of mind at that time was to frame the defendant for crimes he did not commit.

"Whether evidence offered at trial is admissible pursuant to one of the exceptions to the hearsay rule presents a question of law. Accordingly, our review of the . . . claim is plenary." *State* v. *Gonzalez*, 75 Conn. App. 364, 375, 815 A.2d 1261 (2003), rev'd on other grounds, 272 Conn. 515, 864 A.2d 847 (2005).

"It is well established that [a]n out-of-court statement is not hearsay . . . if it is offered to illustrate circumstantially the declarant's then present state of mind, rather than to prove the truth of the matter asserted." (Internal quotation marks omitted.) *State* v. *Adams*, 52 Conn. App. 643, 657, 727 A.2d 780 (1999), aff'd, 252 Conn. 752, 748 A.2d 872, cert. denied, 531 U.S. 876, 121 S. Ct. 182, 148 L. Ed. 2d 126 (2000). The state of mind exception to the hearsay rule pursuant to § 8-3 (4) of the Connecticut Code of Evidence provides: "A statement of the declarant's then-existing mental or emotional condition, *including a statement indicating a present intention to do a particular act in the immediate future,* provided that the statement is a natural expression of the condition and is not a statement of memory or belief to prove the fact remembered or believed." (Emphasis added.) For instance, the statement of a defendant, who had fled the scene of an accident, that "he wanted to return to the accident scene plainly fits within the state of mind exception pursuant to § 8-3 (4) . . . because, as the exception provides, it indicat[ed] a present intention to do a particular act in the immediate future, namely, to return to the accident scene." (Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 257, 856 A.2d 917 (2004).

However, "[s]tatements by [a declarant] *after the act,* stating the *past intent or motive* at the time of the act are inadmissible under the state of mind exception to the hearsay rule." (Emphasis in original; internal quotation marks omitted.) *State* v. *Freeney*, 228 Conn. 582, 595, 637 A.2d 1088 (1994). For example, a defendant's "postarrest statements that he had committed an assault but not a kidnapping or a sexual assault to indicate that he had fled from the police because he had struck the victim" do not fall within the state of mind exception; id.; nor do a defendant's postarrest

statements that he had stabbed the victim in self-defense. See *State* v. *Adams,* supra, 52 Conn. App. 656–57.

Although the statement at issue in this case—"I got Richie. I got him good"—is ambiguous and, thus, amenable to interpretation, even under the defendant's interpretation, it falls within the latter category of statements, namely, those by a declarant *"after the act,* stating the *past intent or motive* at the time of the act . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Freeney,* supra, 228 Conn. 595. Indeed, at oral argument, defense counsel characterized the victim's state of mind at the time she made the statement as a sense of "revenge having been achieved," as opposed to revenge *going to be* achieved. Hence, under the defendant's characterization, the victim's statement, in Justice Cardozo's words, "faced backward and not forward." *Shepard* v. *United States,* 290 U.S. 96, 106, 54 S. Ct. 22, 78 L. Ed. 196 (1933). To illustrate that distinction, we note that if, before she made the sexual assault allegations against the defendant, the victim had stated that she was going to exact revenge on the defendant, then the statement would fall within the state of mind exception because it would indicate a present intention to do a particular act in the immediate future, namely, to exact revenge on the defendant. See *State* v. *Perkins,* supra, 271 Conn. 257. Conversely, the statement at issue in this case does not look to the future, but rather points backward to, according to the defendant, the victim's motivation for making the sexual assault allegations: revenge. As such, even if we assume, for the sake of argument, that the defendant's characterization of the statement is correct, the statement is, nevertheless, one made by a declarant *after the act,* stating the *past intent or motive* at the time of the act and, therefore, does not fall within the exception to the hearsay rule. See *State* v. *Freeney,* supra, 595.

Accordingly, we conclude that the court did not abuse its discretion by excluding as hearsay the statement made by the victim.

The judgment is affirmed.

In this opinion the other judges concurred.